Michael L. Kelly - State Bar No. 82063
mlk@kirtlandpackard.com
Robert M. Churella - State Bar No. 73319
rmc@kirtlandpackard.com
KIRTLAND & PACKARD, LLP
2361 Rosecrans Avenue, 4th Floor
El Segundo, California  90245
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

Harry V. Lehmann - State Bar No. 77151
LAW OFFICES OF HARRY V. LEHMANN
hvlehmann@earthlink.net
1450 Grant Avenue, Ste. 205
P.O. Box 1846
Novato, CA  94948-1846
Telephone: (415) 897-2121
Facsimile: (415) 898-6959

Michael W. Milward - State Bar No. 99962
mmilward@sonic.net
LAW OFFICE OF MICHAEL W. MILWARD & ELLEN D. VOGT
1111 Dunbar Road, Suite A-200
P.O. Box 233
Arnold, CA 95223
Telephone: (209) 795-0271
Facsimile: (209) 795-0419

Scott A. Williams - State Bar No. 78588
Flynn William LLP
1010 B St #200
San Rafael, CA 94901
Telephone: (415) 461-1000
Facsimile: (415) 482-9939

Attorneys for Plaintiff EDMUNDO M. ROMBEIRO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMUNDO M. ROMBEIRO, on behalf of himself and all others similarly situated, | Case No. C 02 4018 SI |
| Plaintiff, | *Before Hon. Susan Illston* |
| vs. | THIRD AMENDED COMPLAINT FOR DISABILITY BENEFITS, INJUNCTIVE AND DECLARATORY RELIEF, AND STATUTORY PENALTIES |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine corporation, *et al.,* Defendants. | |

01984-00001  143190.01

Plaintiff alleges:

**PARTIES**

1.     Plaintiff Edmundo M. Rombeiro is, and at all times mentioned herein has been, a resident of Marin County, California.

2.     Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA (UNUM), is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Maine, and authorized to engage in, and engaged in, the business of insurance in the State of California.

3.     Defendant UNUMPROVIDENT CORP (UNUMPROVIDENT), previously identified as Doe 2 is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, and authorized to engage in, and engaged in, the business of insurance in the State of California.  In doing the things herein UNUMPROVIDENT was acting in joint venture and as a combined enterprise with its agent and subsidiary, defendant UNUM LIFE INSURANCE COMPANY OF AMERICA (UNUM), was a direct participant in the matters herein described, or is legally responsible on the basis of corporate relationship with UNUM, including, but not limited to, principal and agent relationship between said entities.

4.     Defendant NEXT LEVEL COMMUNICATIONS GROUP LONG TERM DISABILITY PLAN (the PLAN), previously identified as Doe 3, is, and at all times mentioned here was, an Employee Welfare Benefit plan, as defined by the Employee Retirement Income social Security Act of 1974, 29 USC §§1001 *et seq.*  (ERISA), which PLAN is created funded, issued and maintained by UNUM. Defendant NEXT LEVEL Communications, a Delaware Corporation (NEXT LEVEL), previously identified as Doe 4 was plaintiff's employer at the time of his disability, and said employer is contractually stated as the administrator of the PLAN.

5.     At all times relevant to this matter, and in doing the things herein alleged, defendant UNUMPROVIDENT was acting in joint venture and as a combined enterprise with its agents and subsidiaries, defendants PAUL REVERE LIFE INSURANCE COMPANY (a Massachusetts Corporation), and PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY (a Tennessee Corporation) [hereinafter jointly referred to as "OTHER INSURER

KIRTLAND & PACKARD LLP
LAW OFFICES

1   DEFENDANTS"], and as a result of joint venture and common enterprise with defendant

2   UNUMPROVIDENT in the provision of disability insurance benefits, and in the joint

3   participation in the management, processing, and denial of claims, said defendants PAUL

4   REVERE LIFE INSURANCE COMPANY, previously identified as Doe 5, previously identified

5   as Doe 6, and PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, previously

6   identified as Doe 7, were direct participants in the matters herein described, or as a result of joint

7   venture, or are legally responsible on the basis of corporate relationship with UNUM, including,

8   but not limited to, principal and agent relationship between said entities.

9          6.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as

10  Does 8 through 1000, and plaintiff is further ignorant of the appropriate charging allegations and

11  theories of liability with respect to said fictitiously named defendants, and therefore plaintiff sues

12  such defendants by such fictitious names. Plaintiff will amend this complaint to allege their true

13  names and capacities when ascertained. Based on information and belief, each of the defendants

14  so designated herein is legally responsible and liable in same manner for the events and

15  happenings be herein referred to, and is therefore liable and responsible to plaintiffs for an amount

16  to be hereinafter determined.

17         7.      Based on information and belief, each defendant individually or fictitiously named

18  herein acted in his, her or its right and also was or is the agent, employee or servant of each of the

19  other defendants, as to each of the matters set forth herein, and each such defendant, whether

20  individually or fictitiously named, was at all times acting within the scope and purpose of such

21  agency, employment or service, or alternatively, if the acts of each such defendant were not

22  authorized at the time, such acts were subsequently ratified by the appropriate principal.

23         8.      The owners and shareholders of the corporate defendants identified herein by name

24  or fictitiously named, and those to be identified in future amendments to this complaint, are liable

25  for plaintiff's damages based on the following:

26              a)      Corporate defendants PAUL REVERE LIFE INSURANCE COMPANY,

27  and UNUM LIFE INSURANCE COMPANY OF AMERICA were created or acquired, or stock in

28  such companies was respectively acquired, by defendant UNUM PROVIDENT for purposes of

1    shielding UNUM PROVIDENT in connection with that defendant's corporate activities, including

2    as to the insurance practices relating to Long Term Disability Insurance as described herein.

3          b)    At all times mentioned herein, there existed a unity of interest and

4    ownership between each and all of the corporate defendants such that any individuality and

5    separateness between said defendants had ceased as to the evaluation of disability insurance

6    claims, and said corporate defendants PAUL REVERE LIFE INSURANCE COMPANY,

7    PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, and UNUM LIFE

8    INSURANCE COMPANY OF AMERICA are the alter ego of defendant UNUMPROVIDENT

9    CORP., and said corporations PAUL REVERE LIFE INSURANCE COMPANY, PROVIDENT

10   LIFE AND ACCIDENT INSURANCE COMPANY, and UNUM LIFE INSURANCE

11   COMPANY OF AMERICAN were conceived and attended to by said defendant

12   UNUMPROVIDENT as a device to avoid liability and for the purpose of substituting said

13   corporation in the place of said defendant UNUMPROVIDENT.

**JURISDICTION AND VENUE**

14

15   9.    This Court's jurisdiction is based upon 28 USC §1331 and 29 USC §1132(e) and

16   (f), as this action arises under ERISA, the Employment Retirement Income Security Act of 1974,

17   29 USC §§1001, et seq.

18   10.    Venue is proper in the Northern District of California, under 28 USC §1391(b), in

19   that Defendants transact substantial business in this district, and earns substantial compensation

20   and profits from its business in this district, and the welfare benefit PLAN described below was

21   entered into by the parties, and to be performed, in this district.

**FACTUAL BACKGROUND TO ALL CLAIMS**

22

23   11.    At relevant times mentioned herein, plaintiff's employer, defendant NEXT LEVEL

24   Communications (hereafter NEXT LEVEL) offered disability insurance to its employees through

25   the PLAN, which was funded and managed by UNUM and UNUMPROVIDENT, Plaintiff was

26   employed at NEXT LEVEL's facility in Rohnert Park, Sonoma County, California. While some

27   PLAN documents describe NEXT LEVEL as the PLAN and as the Plan Administrator, at all times

28   herein defendants UNUM and UNUMPROVIDENT were de facto administrators of PLAN

operations, and as to matters relating to the sufficiency of claims, directed PLAN operations.

12.     At relevant times mentioned herein UNUM and UNUMPROVIDENT had full discretionary authority in connection with the management of the PLAN and had sole authority to grant or deny claims, and to determine appeals of claims denied, and are therefore ERISA fiduciaries with respect to the handling of claims. The final denial of plaintiff's claim was by UNUMPROVIDENT.

13.     In or about July 1998, plaintiff purchased a policy of disability insurance from Unum (Policy No. 00390539-0001), through NEXT LEVEL.  NEXT LEVEL paid to Unum the agreed upon premium and at all relevant times continued to pay said premium when due, and in consideration thereof. Plaintiff and his employer have performed all obligations owed to UNUM and UNUMPROVIDENT under the PLAN and policy of insurance on their part to be performed.

14.     The PLAN and policy of insurance were in writing, and provided for disability payments to be made to plaintiff upon plaintiff becoming disabled from his usual and customary employment. The PLAN and policy stated, inter alia, that "You are disabled when Unum determines that ... You are limited from performing the material and substantial duties of your regular occupation due to a sickness or injury; and . . . You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury. You will continue to receive payments beyond 24 months if you are also ... Working in any occupation and continue to have a 20% or more loss in your indexed monthly earnings due to said sickness or injury; or not working and due to the same sickness or injury, are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."

15.     On or about May 16, 2000, plaintiff became disabled, at age 60, within the terms of the PLAN and policy of insurance.  At that time he suffered from severe, debilitating, uncontrolled diabetes, reaching a glucose count of 710 (normal range is 70-115), and suffered consequent effects including permanent diabetic neuropathy (nerve damage) resulting in loss of feeling and coordination in his extremities, blurred vision, dizziness and severe fatigue. His physician forwarded his medical opinion to Defendants that, as a consequence of this condition, plaintiff was unable to safely perform his usual occupation as a mechanical technician and was therefore

KIRTLAND & PACKARD LLP
LAW OFFICES

1  disabled. Plaintiff thereupon gave notice to defendants, and each of them, of his disability, in the

2  manner described in the PLAN and policy of insurance, and did all other things required of him by

3  the terms of same to be done, and therefore was entitled to the benefits thereof, which had been

4  applied for, agreed to, and paid for.

5        16.    Plaintiff has continued, without interruption, to be disabled within the terms of said

6  PLAN and policy of insurance at all times since May 16, 2000.  Defendants were informed of his

7  continuing disability by Plaintiff's doctors, who continue to be of the opinion that he remained

8  disabled throughout this period.  Defendants failed to either examine the plaintiff or obtain his

9  examination by a physician.  Plaintiff was therefore entitled to benefits for a period of disability of

10 five years commencing from May 16, 2000.

11       17.    Despite plaintiffs entitlement to benefits, Defendants PLAN, NEXT LEVEL,

12 UNUM and UNUMPROVIDENT, as part of a scheme to deny benefits to plaintiff in which

13 scheme all defendants are involved, have withheld and refused to pay to plaintiff the benefits to

14 which he is entitled, or any benefits whatever, and continue to so withhold and refuse to pay

15 benefits in violation of their duties under ERISA and under the terms of the PLAN and Policy.

16 Defendants UNUM and UNUMPROVIDENT, (which had full discretionary authority over

17 management of the PLAN and benefit denials, which authority it was required to exercise as a

18 fiduciary), made the denial decisions, in which denial(s) of benefits Defendants PLAN and NEXT

19 LEVEL passively acquiesced. On or about October 29, 2001, defendant UNUMPROVIDENT

20 communicated the denial of plaintiff's claim, stating in such written denial that Plaintiff had

21 exhausted all alleged administrative remedies.

22       18.    Defendants UNUM and UNUMPROVIDENT's withholding and refusal to pay to

23 plaintiff the benefits to which he is entitled, or any benefits whatever, and continuing to so

24 withhold and refuse to pay benefits has been done arbitrarily and capriciously, without substantial

25 justification, in breach of their duties under the PLAN and policy of insurance, in violation of their

26 duties under ERISA, and in breach of their fiduciary duty.

27       19.    Said denial, refusal to pay, and withholding of benefits was purposefully done by

28 Defendants UNUM and UNUMPROVIDENT, despite Plaintiff's disability and entitlement to

KIRTLAND & PACKARD LLP
LAW OFFICES

benefits, and despite the fact that UNUM and UNUMPROVIDENT had purposefully failed to perform or have performed any medical examination of plaintiff, despite the existence, and provision of, clinical data sufficient to support as to said disability, and despite the opinions of Plaintiff's medical providers and experts, provided to UNUM and UNUMPROVIDENT, confirming said disability and/or inconclusive status of data regarding said disability. In making said denial UNUM and UNUMPROVIDENT failed to interview plaintiff, to obtain any medical examination, failed to obtain relevant information from plaintiff's doctors, or to conduct a reasonable and adequate investigation of plaintiff's claim. Said denial, refusal to pay, and purposeful withholding of benefits in these circumstances were wrongful, oppressive, malicious, arbitrary and capricious, without substantial justification, in breach of their duties under the policy of insurance, in violation of their duties under ERISA, and in breach of their fiduciary duty.

20.     Upon denial of the claim, UNUM and UNUMPROVIDENT also informed plaintiff that they were terminating his coverage under the PLAN and policy of insurance. That termination was arbitrary and capricious, without substantial justification, and was part of defendants' purposeful scheme to deny claims by circumventing their fiduciary duties to their insureds, and in breach of their duties under the PLAN and policy of insurance, in violation of their duties under ERISA, and in breach of their fiduciary duty. Further, the termination of plaintiff's policy amounted to an act of unlawful retaliation, as described in 29 USC §1140, which interfered with plaintiff's protected rights.

21.     Plaintiff is informed and believes that UNUM and UNUMPROVIDENT's wrongful conduct in denying his claim and terminating his policy was not an isolated incident, but was in fact part of a policy and practice by UNUM and UNUMPROVIDENT to knowingly and wrongfully deny legitimate claims and terminate the policies of those making claims in order to increase and maximize their profits.

22.     The policy and practice of UNUM, UNUMPROVIDENT, and OTHER INSURER DEFENDANTS, in knowingly and wrongfully denying legitimate claims and terminating valid policies of plaintiff and other claimants, all in violation of the fiduciary duties of such defendants, and as part of a scheme to circumvent same, was pursued by conduct including, but not limited to:

LAW OFFICES
KIRTLAND & PACKARD LLP

a) Purposefully withholding and failing to make payments to claimants when UNUM and UNUMPROVIDENT and OTHER INSURER DEFENDANTS knew they were entitled to payments under the terms of the policies of insurance;

b) Purposefully denying claimants' claims when UNUM, UNUMPROVIDENT and OTHER INSURER DEFENDANTS knew they were valid and/or that it had insufficient information to determine whether said claims were valid or not;

c) Purposefully failing to promptly investigate and process claimants' claims and/or failing to sufficiently investigate the claims before denying, withholding and refusing to pay benefits due under the policies of insurance;

d) Misrepresenting to claimants and/or withholding information, including pertinent facts and policy provisions relating to the coverage at issue under the policies of insurance;

e) Not attempting in good faith to pay claimants' claims, although their duty to pay the claims was clear;

f) Imposing monthly and/*or* other periodic budget ceilings for the total amount to be paid on claims and to deny new claims or terminate existing claims when total claim payments exceeded the budget ceiling, rather than the merits of the claims;

g) Rewarding physicians, claims personnel, claims "consultants" and claims supervisors with bonuses or financial incentives for denying or terminating claims despite the merits of the wrongly denied claims and for fabricating alleged medical justification for such denials of benefits or wrongful policy terminations;

h) Unlawfully maintaining holding from claimants undisclosed separate claims analysis files, segregated from the disclosed claim files, and failing to provide data therein and otherwise held, to which data the claimants were entitled to access as a matter of federal law, which separately maintained claimant files were used as repositories for documents and reports which contained data which was not consistent. with the decision to deny or benefits, or related to the conduct of the defendants in using profitability as an integrated element of said defendants' disability insurance denial practices, which practices were promulgated and deployed in order to

evade production of such documents with the official claims files during litigation;

    I)  In those instances where individual claimants had pursued their disability insurance rights through the prosecution of litigation, and where as a result of such prosecution of litigation individual settlements were obtained, requiring, as a condition precedent to any such settlement(s) that the settling claimants and their counsel execute confidentiality agreements so that the discoveries made in of the individual cases as to the wrongful conduct of the defendants would be shielded from discovery by other claimants against the defendants, despite that there is no provision under ERISA giving any authorization to any ERISA carrier to compel compliance with such confidentiality provisions as such a condition precedent to the obtainment of benefits.

    j)  Purposefully failing to provide adequate and timely notice setting forth the specific reasons in terms of the facts, law or policy provisions for its decisions to withhold and fail to pay benefits, to deny claims, and to terminate policy coverage, written in a manner calculated to be understood by the participant.

    k)  Terminating claimants' coverage unlawfully, arbitrarily and capriciously, without substantial justification;

    1)  Purposefully failing to comply with the provisions, procedures, protocols and definitions contained in the policies of insurance, and/or unreasonably, incorrectly and unlawfully interpreting and/or applying said provisions, procedures, protocols and definitions;

    m)  Unreasonably, incorrectly and unlawfully interpreting and/or applying said provisions, procedures, protocols and definitions,

    n)  Manufacturing false grounds for denial of just claims, and;

    p)  In numerous other respects.

  The existence and operation of this policy and practice was confirmed and set forth in the Court's extensive series of Findings of Fact in *Merrick v. Paul Revere Life Ins. Co.*, 594 F. Supp.2d 1168 (D. Nev. 2008), and in the Decision and Order of Insurance Commissioner Upon Settlement issued by the California Department of Insurance on October 3, 2005 (copy attached hereto as Exhibit "A"), which lists 28 separate acts or practices which were in violation of California Insurance Code §§ 700 and 704.

23.     The policy and practice of UNUM, UNUMPROVIDENT, and OTHER INSURER DEFENDANTS, in wrongfully denying legitimate claims was based upon the policy determination of said defendants that, through exploitation of the structure of ERISA, they could deny legitimate claims but prevail in the aggregate in the ERISA claim process, since individual ERISA claims are subject to a lower level of scrutiny than other actions, and because the costs of defending such claims and paying benefits to those who prevail are outweighed by the increased profits from continuing to wrongfully deny claims, since, under their concept of ERISA, they are protected from state tort actions and not subject to punitive or consequential damages, so that even if the claimant ultimately prevailed, the risk was only that it would have to pay benefits on legitimate claims they would have otherwise have paid had they not wrongfully denied the claim.

24.     The policy and practice of UNUM, UNUMPROVIDENT, and OTHER INSURER DEFENDANTS was in violation of ERISA because, under ERISA, they owed fiduciary duties to their insured claimants, since they had full discretionary authority regarding management of the .PLAN and to grant or deny claims or terminate coverage, and to determine the appeals process for claims denied or coverage terminated, and as fiduciaries had the duty to consider the interests of their insureds at least as highly as their own interests, and to not arbitrarily deny coverage based upon financial decisions without regard to the merits of said claims

25.     The conduct of UNUM, UNUMPROVIDENT, and OTHER INSURER DEFENDANTS, was arbitrary and capricious, without substantial justification, willful, fraudulent, malicious and oppressive, and in breach of fiduciary duties under the PLAN, the policies of insurance and ERISA. FIRST CLAIM FOR RELIEF Benefits and Reinstatement- Against Plan and Next Level

26.     ERISA, 29 USC §1132 (a)( 1), authorizes civil actions by insureds to recover benefits due under the terms of their employee plans, as well as for reinstatement under a plan from which they have been terminated.

27.     As alleged above, defendants PLAN and NEXT LEVEL have wrongfully refused, and continue to refuse, to pay the benefits due under the PLAN and their policies, and Plaintiff therefore seeks recovery for all benefits due, plus interest thereon at the legal rate.

28.     Additionally, as hereinbefore alleged, Plaintiff was unjustly terminated from the PLAN and Policy in breach of defendants' duties under the PLAN and policy of insurance, in violation of its duties under ERISA, and in breach of its fiduciary duty. Plaintiff therefore seeks reinstatement to his rightful status of PLAN member and insured.

29.     Further, the termination of plaintiff's policy amounted to an act of unlawful retaliation, as described in 29 USC §1140, which interfered with plaintiff's protected rights.

30.     Additionally, plaintiff is entitled to an award of attorney fees pursuant to 29 USC §1132(g)(I).

## SECOND CLAIM FOR RELIEF

### Penalty - Violation of Claims Procedure (Plan and Next Level)

31.     ERISA, 29 USC §1133(l), requires plan administrators to provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, and written in a manner calculated to be understood by the participant.  Accordingly, PLAN and NEXT LEVEL were required to promptly provide plaintiff with adequate and sufficient reasons and justification for their decisions to withhold and fail to pay benefits, to deny claims, and to terminate policy coverage.

32.     In plaintiff's case, such information should have been provided within a reasonable time after the claim was submitted on May 29, 2000. However, PLAN and NEXT LEVEL delayed providing any information for over a year, and then provided information which did not contain adequate and sufficient reasons and justification for its decisions to withhold and fail to pay benefits, to deny his claim, and to terminate his policy coverage. To date, PLAN and NEXT LEVEL still have not provided this information, despite plaintiff's continuing requests for such information.

33.     Plaintiff is informed and believes that PLAN and NEXT LEVEL, at the instruction of UNUM, UNUMPROVIDENT and OTHER INSURER DEFENDANTS, have withheld information from the plaintiff, as part of the plan of such insurer and subsidiary defendants to increase and maximize profits through wrongful denial of claims.

34.     Under the terms of 29 USC §1132 (c), failure to provide requested information is

01984-00001  143190.01

-10-

KIRTLAND & PACKARD LLP
LAW OFFICES

1   actionable, and subjects the offender to a fine of up to $100 a day for each day that the information

2   is not provided.

3      35.  Plaintiff is entitled to an award of $100 per day from May 29, 2000, to the present,

4   and for each day hereafter until such information is provided.

5      36.  Additionally, plaintiff is entitled to attorney fees pursuant to 29 USC §1132(g)(l).

6               **THIRD CLAIM FOR RELIEF**

7             **Equitable and Declaratory Relief**

8       **(UNUM, UNUMPROVIDENT, and OTHER INSURER DEFENDANTS)**

9      37.  Subsequent to the filing of this action, UNUM, UNUMPROVIDENT and OTHER

10  INSURER DEFENDANTS entered into two agreements with regulatory authorities following the

11  institution of investigations by certain of the authorities into the policies, practices and conduct of

12  those defendants as alleged above.

13     38.  The first of those agreements, named by the parties to the agreement the Regulatory

14  Settlement Agreement ("RSA") was entered into on or about November 18, 2004, with the

15  insurance regulatory agencies of the States of Maine, New York and Tennessee and the U.S.

16  Department of Labor, and joined in by the insurance regulatory agencies of 45 other states, not

17  including California.  The RSA was amended once as of October 3, 2005.

18     39.  The second agreement, named by the parties to the agreement the California

19  Settlement Agreement ("CSA") was entered into with the California Department of Insurance,

20  effective October 3, 2005.

21     40.  The RSA and CSA both required defendants to cease the wrongful claims handling

22  policies, practices and conduct described above as to all then pending and future claims, to

23  institute various reforms in their disability insurance policies, internal claims handling practices,

24  training, staffing, structures and other matters, including a period of oversight of their claims

25  handling by the regulatory agencies and a $145,000,000.00 fine.

26     41.  The RSA and CSA also both required defendants to afford the opportunity for all

27  claimants whose claims had previously been rejected (which Plaintiff is informed and believes and

28  thereon alleges numbered approximately 215,000 nationwide) to have their claims re-reviewed

1  under the improved claims handling procedures required by the settlement agreements.  All

2  claimants whose claims were reviewed pursuant to the CSA were also granted the right to request

3  an independent review of any claims that were again denied after re-review by defendants.

4      42.    The re- review under the RSA and the CSA was required, however, only for those

5  claimants who affirmatively requested such re-review, i.e., for those claimants who "opted in" to

6  the re-review process.

7      43.    In order for those claimants whose claims had previously had been denied to have

8  the opportunity to opt in to the re-review process, both the RSA and CSA expressly required

9  defendants to mail notices to all of those claimants of their right to seek re-review of their claims.

10     44.    Plaintiff is informed and believes, and thereon alleges, that defendants, in violation

11 of their fiduciary duties as insurers owed to the claimants insured under their policies, simply

12 mailed the required notices to the last known addresses of the claimants, by regular mail or

13 through the use of a bulk mail permit, despite the fact that many of the claims had been denied

14 many years earlier, and made no effort to assure that current addresses were obtained so that the

15 claimants received actual notice of their right to seek re-review.

16     45.    Plaintiff is informed and believes, and thereon alleges, that the envelopes in which

17 the notices were mailed had no language on the exterior of the envelope to notify the recipient that

18 the contents related to a legal agreement providing rights relating to previously denied claims, and

19 many recipients may thus have simply thrown the envelopes out without opening them as either

20 junk mail or due to their having come from a company they wanted nothing further to do with.

21     46.    Defendants, as sophisticated and experienced insurance companies,  regularly

22 engaged in the dispatch of mail to their cumulative 18 million disability insureds, at all times

23 relevant hereto knew well that, in our highly mobile society, a significant percentage of the

24 insureds whose claims had been denied had changed residence addresses by the time the RSA and

25 the CSA were entered into, and that those who had moved were thus unlikely to receive actual

26 notice of their right to re-review of their claims as provided for in the RSA and the CSA.

27     47.    Defendants thus knew and also were reasonably chargeable with knowledge that

28 sending the notices by regular mail would inevitably result in a significant portion of the

KIRTLAND & PACKARD LLP
LAW OFFICES

1   wrongfully denied claims being deprived of RSA or CSA review because no request for re-review

2   would ever be made by that predictable percentage of claimants who never received notice due to

3   address change, thereby enabling the defendants to retain the profits they had accrued by the

4   wrongful denial of those claims.  Thus, sending notices by ordinary mail was a profit driven

5   decision, when compared to the result which would have occurred with even minimal tracking and

6   follow-up.

7        48.     Plaintiff is informed and believes, and thereon alleges, that as a result of this

8   improper addressing and labeling, a likely majority of the claimants eligible for re-review under

9   the RSA and the CSA in fact never received notice of their right to seek such re-review, and likely

10  only a minority of the eligible claimants in fact responded to the notices.  Thus, propelled by a

11  continuing interest in profit retention, the defendants planned or negligently allowed their

12  "ordinary mail" approach so as to result that the respective likelihood of such majority and

13  minority outcomes could not, after the mailing, be judged, as receipt records were not kept.

14       49.     Plaintiff is informed and believes, and thereon alleges, that even this minority

15  response to the notice of the right to re-review of their claims resulted defendants paying over

16  $800 million to approximately 16 thousand claimants, including over $112 million to over 1,100

17  California claimants.

18       50.     Plaintiff is informed and believes, and thereon alleges, that by following the

19  inadequate addressing and envelope labeling procedure, defendants thus avoided paying many

20  hundreds of millions of dollars to claimants who would have recovered those sums if they had

21  received actual notice of their right to re-review of their claims under the RSA and the CSA.

22       51.     The time to seek re-review under the RSA and the CSA has closed, and those

23  claimants who did not receive actual notice of their right to seek re-review under the RSA and the

24  CSA have no current remedy under ERISA to seek recovery of the benefits which were wrongfully

25  denied to them.

26       52.     In addition, as the Merrick court found,

27          the regulatory settlements did not deprive Defendants of their ill-gotten

28          gains to any substantial degree.  Even though Defendants have been forced

KIRTLAND & PACKARD LLP
LAW OFFICES

1   to post additional reserves to cover those claims that they agreed to reopen,

2   they maintain control of those funds and the earnings they generate from

3   them. Similarly, Defendants have not even attempted to fully compensate

4   those harmed by their misconduct, and, in fact, required individuals who had

5   their claims reopened to waive their rights to full redress. *Id.* at 1190.

6   53.   ERISA, 29 USC §1132(a)(3), authorizes a plan participant to enjoin

7   violations of ERISA or the terms of the plan, or for other appropriate equitable relief to

8   redress such violations.

9   54.   Plaintiff therefore requests this Court to grant injunctive and equitable relief

10  pursuant to § 1132(a)(3)  including, but not limited to:

11  a)   Ordering UNUM and UNUMPROVIDENT and OTHER INSURER

12  DEFENDANTS to reopen the right to re-review for all claimants who did not respond to the

13  notices mailed under the RSA and CSA for a reasonable period of time;

14  b)   Ordering UNUM and UNUMPROVIDENT and OTHER INSURER

15  DEFENDANTS to re-mail the Notices required under the RSA and the CSA to all claimants who

16  did not respond to the notices mailed under the RSA and CSA, after taking appropriate steps at

17  their expense to determine accurate, current addresses for those claimants, and including on the

18  outside of the envelopes some language placing the recipient on notice that the contents of the

19  envelope related to a settlement granting rights related to previously denied disability claims;

20  c)   Ordering  UNUM and UNUMPROVIDENT and OTHER INSURER

21  DEFENDANTS to re-review all claims resubmitted pursuant to the new mailing according to the

22  applicable provisions of the RSA or CSA;

23  d)   Ordering UNUM UNUMPROVIDENT and OTHER INSURER

24  DEFENDANTS to disgorge all profits received as a result of the improper denial, prior to the

25  implementation of the RSA and CSA imposed claims handling procedures, of claims made under

26  disability policies, and imposing a constructive trust thereon.

27  55.   Plaintiff and those claimants who did nor receive actual notice of their rights under

28  the RSA and the CSA will suffer great and irreparable injury unless this Court grants such

KIRTLAND & PACKARD LLP
LAW OFFICES

injunctive and equitable relief, in that unless relief is granted they will be permanently deprived of the benefits of their policies of insurance, which they have obtained in order to be secure against the ravages of serious injury or illness causing disability, and will suffer the worry and anxiety that they and their families will not be provided with even the necessities of life. Also, unless relief is granted, UNUM and UNUMPROVIDENT and OTHER INSURER DEFENDANTS will continue to retain the profits generated from their violations of ERISA through the acts set forth above.

56.     Plaintiff and those claimants who did nor receive actual notice of their rights under the RSA and the CSA have no adequate remedy at law for the injuries they have suffered, other than that requested herein.

57.     An actual controversy has arisen and now exists between plaintiff, on one side of said controversy, and UNUM, UNUMPROVIDENT, and OTHER INSURER DEFENDANTS on the other side of the controversy, concerning their respective rights and duties under the disability policy of insurance ultimately administered, as to claims, by UNUM, UNUM PROVIDENT and OTHER INSURER DEFENDANTS, including, but not limited to, whether plaintiff is entitled to past and continuing benefits, whether his coverage has been wrongly terminated by UNUM and UNUMPROVIDENT and OTHER INSURER DEFENDANTS as a part of the scheme herein described, and, whether UNUM and UNUMPROVIDENT and OTHER INSURER DEFENDANTS have breached their fiduciary duties and those imposed by ERISA, by failing to give adequate actual notice to many of those entitled to have their claims re-examined under the RSA and the CSA.

58.     Plaintiff desires a judicial determination and declaration of the respective rights and duties of the parties with respect to their rights and duties under the policies of insurance.

59.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their respective rights and duties with respect to the policies of insurance, and because the parties are confused and in opposition as to their respective rights and duties, and will remain so, until this Court acts by way of declaratory relief.

60.     Additionally, plaintiff is entitled to attorney fees pursuant to 29 USC §1132(g)(1).

**PRAYER**

LAW OFFICES
KIRTLAND & PACKARD LLP

WHEREFORE, plaintiff requests judgment against defendants, and each of them, as follows:

1. For payment of past disability benefits to plaintiff;

2. For interest thereon at the legal rate;

3. For the disgorgement of profits by UNUM, UNUMPROVIDENT and OTHER INSURER DEFENDANTS received as a result of the improper denial, prior to the implementation of the RSA and CSA imposed claims handling procedures, of claims made under disability policies, and imposing a constructive trust thereon;

4. For injunctive relief :

    a) Ordering UNUM and UNUMPROVIDENT and OTHER INSURER DEFENDANTS to reopen the right to re-review for all claimants who did not respond to the notices mailed under the RSA and CSA for a reasonable period of time, and

    b) Ordering UNUM and UNUMPROVIDENT and OTHER INSURER DEFENDANTS to re-mail the Notices required under the RSA and the CSA to all claimants who did not respond to the notices mailed under the RSA and CSA, after taking appropriate steps at their expense to determine accurate, current addresses for those claimants, and including on the outside of the envelopes some language placing the recipient on notice that the contents of the envelope related to a settlement granting rights related to previously denied disability claims, and

    c) Ordering UNUM and UNUMPROVIDENT and OTHER INSURER DEFENDANTS to re-review all claims resubmitted pursuant to the new mailing according to the applicable provisions of the RSA or CSA;

5. For declaratory relief as requested herein;

6. For an award of $100 per day for plaintiff Edmundo Rombeiro, as requested herein;

7. For an award pursuant to 29 USC §§1132 (c) and1133, as this Court may deem proper;

8. For costs of suit herein incurred herein;

9. For attorney fees in an amount according to proof; and

10.     For such other and further relief as this Court may deem proper.

DATED: September 24, 2010                    KIRTLAND & PACKARD LLP

                                    By:      /s/ Michael Louis Kelly
                                             MICHAEL LOUIS KELLY
                                             Attorneys for Plaintiff EDMUNDO M. ROMBEIRO

DATED: September 24, 2010, 2010              LAW OFFICES OF HARRY V. LEHMANN

                                    By:      /s/ Harry V. Lehmann
                                             HARRY V. LEHMANN
                                             Attorneys for Plaintiff EDMUNDO M. ROMBEIRO