IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMUNDO M. ROMBEIRO,<br><br>      Plaintiff,<br><br>  v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, et al.,<br><br>      Defendants.<br>_____/ | No. C 02-04018 SI<br><br>**ORDER RE: NEXT LEVEL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; UNUM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT** |

On December 16, 2010, the Court heard argument on the three currently pending motions: (1) the motion for summary judgment filed by defendants Next Level Communications and Next Level Communications Group Long Term Disability Plan; (2) the motion for summary judgment filed by defendants Unum Life Insurance Company of America, Unumprovident Corp., Paul Revere Life Insurance Co., and Provident Life & Accident Insurance Co.; and (3) the motion for leave to file a fourth amended complaint filed by plaintiff. Having considered the arguments of counsel and the papers submitted, the Court hereby rules as follows.

**BACKGROUND**

Plaintiff Edmundo M. Rombeiro participated in a long term disability insurance plan that his employer, defendant Next Level Communications ("Next Level"), established for the benefit of its employees.[1] Defendant Next Level established the Next Level Communications Group Long Term

---

[1] The parties agree that this benefit plan was an "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1). An employee welfare benefit plan is one "established or maintained by an employer or by an employee organization, or by both, . . . for the purpose of providing [various types

Disability Plan ("Plan"). The Plan then provided benefits and was funded through the purchase of an insurance policy from defendant Unum Life Insurance Company of America ("Unum Life"). Defendant Next Level paid defendant Unum Life the required policy premiums while Unum Life agreed to provide long term disability coverage, or a long term disability plan, to eligible Next Level employees.

Plaintiff filed suit because, he alleges, he became disabled within the terms of the Plan and policy of insurance, he notified defendants of his disability and complied with all other requirements of the Plan and policy, but defendant Unum Life denied his claim for disability benefits and terminated his coverage.

On July 15, 2002, plaintiff filed a complaint against defendant Unum Life in state court. Defendant Unum Life removed plaintiff's case to federal court, and on January 21, 2003, plaintiff filed a First Amended Complaint against defendant Unum Life and an allegedly affiliated entity, seeking class action certification and asserting four claims for relief under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). On April 30, 2003, the Court dismissed two of the claims. Doc. 25. On May 15, 2003, plaintiff filed a Second Amended Complaint, in which he named additional defendants, including Next Level and the Plan ("Next Level defendants"). Doc. 27. On October 1, 2003, the case was transferred to the Eastern District of Tennessee by the Judicial Panel on Multidistrict Litigation, Doc. 60, where it was consolidated with six other class actions, MDL Doc. 250 at 2.

On September 4, 2007, the MDL Court entered an order certifying a class action under Rule 23(b)(2), which was immediately appealed to the Sixth Circuit. MDL Docs. 230–32. The Sixth Circuit reversed, holding that the wrongful denial of benefits claim required an inquiry into causation that would prove too fact specific for the typicality requirement of class action certification to be met. MDL Doc. 234; *Romberio v. Unumprovident Corp.*, 385 Fed. Appx. 423 (6th Cir. 2009). On June 8, 2010, plaintiff's case was remanded to this Court. Doc. 62.

On August 31, 2010, the Court granted plaintiff leave to file a Third Amended Complaint ("3AC"), which he did on September 24. Docs. 75–76. Named as defendants in the complaint are the

---

of benefits] for its participants or their beneficiaries, through the purchase of insurance or otherwise[.]" 29 U.S.C. § 1002(1).

2

Next Level defendants, as well as Unum, Paul Revere Life Insurance Company, Provident Life & Accident Insurance Company, Unum Life Insurance Company of America, and UnumProvident Corporation ("Unum defendants"). Plaintiff makes three ERISA claims: (1) for benefits and reinstatement against the Next Level defendants, under 29 U.S.C. § 1132(a)(1); (2) for penalties for violation of claims procedures against the Next Level defendants, under 29 U.S.C. § 1132(c); and (3) for equitable and declaratory relief for violation of ERISA or the terms of the plan against the Unum defendants, under 29 U.S.C. § 1132(a)(3).

In the meantime, several subsidiaries of Unum Group, including defendant Unum Life, entered into a Regulatory Settlement Agreement ("RSA") with the U.S. Department of Labor and the insurance departments of 48 states. Griffin Decl. ¶¶ 2–3, Ex. A ("RSA"). Separately, subsidiaries of Unum Group, including defendant Unum Life, entered into a settlement agreement with the California Department of Insurance ("CSA"). *Id.* ¶¶ 7-88, Ex. B. These agreements require defendant Unum Life to implement new claims handing practices and also to provide certain claimants the opportunity to have their denied claims reassessed. RSA Section B. The CSA instituted requirements above and beyond those in the RSA, including providing for an opportunity for independent, third-party review of denied claims. CSA Sections III–V. Notice was sent to plaintiff of his opportunity to participate in the CSA reassessment, and he did not elect to participate. Griffin Decl. ¶¶ 9–10.

Currently before the Court are the motions for summary judgment filed by the Next Level defendants and the Unum defendants, as well as plaintiff's motion for leave to file a fourth amended complaint.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

3

to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).[2] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(e) (current-Rule 56(c)(2)).

---

[2] This motion was filed before the most recent revision of Rule 56 went into effect, but argued after. The standard for granting summary judgment has not changed. As the Committee notes on the recent amendment state:
> Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

4

**II.     Leave to Amend**

Federal Rule of Civil Procedure 15 governs amendment of the pleadings. It states that if a responsive pleading has already been filed, the party seeking amendment "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Accordingly, the Court must be generous in granting leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted with "extreme liberality"); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

However, there are several accepted reasons to deny leave to amend, including the presence of bad faith on the part of the plaintiff, undue delay, prejudice to the defendant, futility of amendment, and that the plaintiff has previously amended the complaint. *See Ascon Properties*, 866 F.2d at 1160; *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988). Courts do not ordinarily consider the validity of a proposed amended pleading in deciding whether to grant leave to amend, but leave may be denied if the proposed amendment is futile or would be subject to dismissal. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

**DISCUSSION**

**I.     Next Level motion for summary judgment**

Plaintiff alleges two claims against the Next Level defendants. First, he brings a claim for benefits and reinstatement under 29 U.S.C. § 1132(a)(1). Second, he brings a claim for penalties allegedly incurred by the plan administrator under 29 U.S.C. § 1132(c) for violating ceratin claims procedures. The Next Level defendants move for summary judgment on both claims.

**A.     Benefits and reinstatement**

The Next Level defendants argue that they are entitled to summary judgment on both claims because of a release that plaintiff signed when he accepted a severance package in May 2002. Plaintiff argues that he did not release his claims for disability benefits.

The Next Level defendants have introduced a form, signed by plaintiff in 2002,[3] that purports to release defendant Next Level and its "agents" from "claims or demands related to . . . fringe benefits." *See* Zar Suppl. Decl. ¶¶ 1, 3–4, Ex. 1 at Ex. A ("Release").[4] They argue that this form acted to release all ERISA-based claims against both Next Level and the Plan, including his claim for denial of disability benefits and reinstatement. They argue that the release applies to the long term disability benefits by its language, citing a Ninth Circuit case for the proposition that long term disability benefits are fringe benefits. *See Jordan v. Northrop Grumman Welfare Benefit Plan*, 370 F.3d 869, 871 (9th Cir. 2004),

---

[3] Plaintiff argues that there is no competent evidence of a release on the record. The Court disagrees. The Next Level defendants have introduced a signed copy of a release form, dated May 2002, and authenticated by Keith Zar, who was Senior Vice President, General Counsel, and Chief Administrative Officer of Next Level throughout 2002. *See* Zar Suppl. Decl. ¶¶ 1, 3–4, Ex. 1 at Ex. A ("Release"). The Court agrees with the Next Level defendants that the release form is a verbal act and not hearsay. *See* Fed. R. Evid. 801(c) advisory committee's notes (the rules "exclude from hearsay the entire category of 'verbal acts' . . . in which the statement itself affects the legal rights of the parties").

Additionally, although plaintiff asserts that he does not remember signing the particular document, he also identifies his signature on the document and does remember signing release documents. Rombeiro Decl. ¶¶ 14, 17. The Court does not see any genuine issue on the record before it as to whether plaintiff signed this release form.

[4] The release states, in relevant part:
> In consideration of the benefits I will receive under the [Severance Benefit] Plan, I hereby release, acquit and forever discharge [Next Level], its parents and subsidiaries, and their respective officers, directors, agents, servants, employees, shareholders, successors, assigns and affiliates, of and from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind and nature, in law, equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed (other than any claim for indemnification I may have as a result of any third party action against me based on my employment with the company) arising out of or in any way related to agreements, events, acts or conduct at any time prior to and including the date I execute this agreement, including but not limited to: all such claims and demands directly or indirectly arising out of or in any way connected with my employment with the Company or the termination of that employment, including but not limited to: all such claims and demands directly or indirectly arising out of or in any way connected with my employment with the Company or the termination of that employment, including but not limited to, claims of intentional and negligent infliction of emotional distress, any and all tort claims for personal injury, claims or demands related to salary, bonuses, commissions, stock, stock options, or any other ownership interests in the Company, vacation pay, fringe benefits, expense reimbursements, severance pay, or any other form of compensation; claims pursuant to any federal, state or local law or cause of action including, but not limited to, the federal Civil Rights Act of 1964, as amended; the federal Age Discrimination in Employment Act of 1967, as amended ("ADEA"); the federal Americans with Disabilities Act of 1990; the California Fair Employment and Housing Act, as amended; tort law; contract law; wrongful discharge; discrimination; fraud; defamation; emotional distress; and breach of the implied covenant of good faith and fair dealing.

*overruled on other grounds in Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc). They argue that a plan is an entity created and administered by an employer. Finally, they cite Black's Law Dictionary to argue that the Plan is therefore, in essence, an agent of Next Level and covered by the release. *See* Black's Law Dictionary, 7th ed., at 64 (defining agent as "one who is authorized to act for or in place of another").

Section 1110(a) of ERISA provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [the fiduciary responsibility sections of ERISA] shall be void as against public policy." 29 U.S.C. § 1110(a). Nonetheless, courts have uniformly permitted "knowing and voluntary" private releases of statutory claims. *See, e.g., Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*, 167 F.3d 709, 713 (1st Cir. 1999); *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990); *Finz v. Schlesinger*, 957 F.2d 78, 81–82 (2d Cir. 1992); *Dist. 29 United Mine Workers of Am. v. New River Co.*, 842 F.2d 734, 737 (4th Cir. 1988); *see also Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1012 (9th Cir. 1997) (explaining that if the defendant argued that the agreements in the case were waivers of benefits, the court "would have to consider whether the mistaken waiver must and would withstand special scrutiny designed to prevent potential employer or fiduciary abuse" (citing, inter alia, *Leavitt*, 120 F.3d at 1012)).

Under the "heightened scrutiny" that federal precedents require for waivers of ERISA pension benefits, courts are obligated to "scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights." *Morais*, 167 F.3d at 713. Court must determine whether a waiver is "knowing and voluntary" by examining the totality of the circumstances, including but not limited to "(1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver." *Id.* at 713 n. 6; *Finz*, 957 F.2d at 82.[5]

---

[5] Although neither party discusses this "heightened scrutiny," they both cite district court cases which rely on *Morais* or *Leavitt* and which engage in "knowing and voluntary relinquishment" analysis. *See Parisi v. Kaiser Foundation Health Plan Long Term Disability Plan*, No. C 06-04359

Here, the terms of the agreement are relatively unclear. The release does not mention the Plan by name. Nor does it mention ERISA by name, even though it does provide a (non-exclusive) extensive list of statutes and common law causes of action that might provide plaintiff with a claim were he not to sign the release. It does not mention pension benefits, health benefits, life insurance, or disability insurance, except to use the specialized term "fringe benefits." It does not exclude any claims or benefits from the release, which would have indicated to plaintiff that all non-excluded claims or benefits were in fact included in the release.

Moreover, plaintiff has presented evidence that he interpreted the severance agreement and release to govern his retirement rights only, which appears to be reasonable even if it does not accord with the exact terms of the agreement. Plaintiff states that he was actively seeking disability payments at the time he signed the release and fully intended to continue to pursue recovery of the benefits. Rombeiro Decl. ¶ 11[a]. The subject of any discussions concerning the severance agreement was his retirement account and his retirement rights, as well as his confidentiality obligations. *Id.* ¶ 11[b]. There was no discussion whatsoever concerning his disability claims. *Id.* ¶ 12. He was not told, and he did not believe, that the documents he was asked to sign would in any way limit his rights to disability insurance; and if he had believed that a document would do so, he would not have signed it. *Id.* ¶ 15.

The agreement states that plaintiff could have taken up to 45 days to study the agreement and could have consulted an attorney. Release at 2. But plaintiff has presented evidence that his attorney at the time (and now), Harry V. Lehmann, was never made aware of or asked to become involved in the negotiations surrounding the signing of the release. Lehmann Decl. ¶ 3.

Plaintiff states that his "career was in high precision fabrication," and that at previous jobs he had taught the operation of certain electronic systems and also constructed computer systems. Rombeiro Decl. ¶ 2. Thus, it appears that he was an electrical engineer. But the Court does not have sufficient evidence of his education or business sophistication to make a determination of whether he should have

---

JSW, 2008 WL 220101, * 4 (N.D. Cal. Jan. 25, 2008) (citing *Morais*); *Piehl v. Metropolitan Life Insurance Co.*, No. Civ. 03-669-MO, 2005 WL 627586, * 2 (D. Or. March 16, 2005) (citing case that relies on *Leavitt*).

8

been expected to understand that the legalistic language of a contract or know to seek advice from counsel.

The Next Level defendants present the release form as a stand-alone document, and the Court does not have any evidence of the amount of consideration that plaintiff received in exchange, and whether it was a sufficient amount that plaintiff could have been expected to understand that he was relinquishing his rights to disability benefits.

Finally, the Next Level defendants have presented evidence that this was a contract of adhesion, a take-it-or-leave-it proposition:

> There were no negotiations between Next Level Communications and its employees regarding the terms of the Release Agreement. If a Next Level Communications employee elected to receive benefits from the Next Level Communications Inc. Severance Plan he or she was required to execute the Release Agreement. If such empoyee did not execute the Release Agreement he or she was not eligible to receive Next Level Communications Inc. Severance Plan benefits.

Suppl. Decl. Zar at ¶ 3.

On this record, the Court cannot find, as a matter of law, that plaintiff has released his claims against the Next Level defendants for disability benefits and reinstatement.

The Next Level defendants cite orders from two district courts in the Ninth Circuit enforcing releases in disability benefits cases, arguing that the case here is not significantly different.[6] In both cases, however, the releases are significantly clearer. In *Parisi*, the release specifically included claims to "benefits," and mentioned "the Employment Retirement Income Security Act of 1974, as amended." 2008 WL 220101, at * 1. Perhaps more importantly to the court, it exempted certain claims for ERISA benefits such as "vested retirement benefits or any benefits . . . under COBRA." *Id.* at *1. In *Piehl*, the release specifically mentioned "any claims arising under the . . . Employee Retirement Security Act of 1974," and specifically exempted from the release certain (non-ERISA) benefits. Relying on the fact that "certain employee benefits were excluded from the release while others, including ERISA benefits, were explicitly released," the court determined that the "plaintiff knowingly and voluntarily released

---

[6] The Next Level defendants also cite an unpublished Ninth Circuit case. *See Austin v. CCC Info. Servs., Inc. Benefit Plan*, 225 Fed. Appx. 671 (9th Cir. 2007). Not only is the opinion non-precedential, as defendants acknowledge, but it also lacks almost any discussion of the facts that were before the district court or the arguments made by the attorneys. The Court does not find the case persuasive one way or the other.

9

her claims to employee disability benefits." 2005 WL 627586, at * 2–* 3.

Similarly, in *Bennett v. CNA Insurance Co.*, No. C-99-03127 EDL, 2001 WL 30533 (N.D. Cal. Jan. 5, 2001), which was not cited by either party, "the Settlement specifically exempted [from the release] vested pension benefits," but did not exempt long term disability. *Id.* at * 5. Moreover, in conducting a totality of the circumstances analysis, the *Bennett* court emphasized the fact that "[t]he Settlement was specifically tailored to [the plaintiff's] situation, *in contrast, for example, to a standard severance package offered on a "take it or leave it" basis*." *Id.* (emphasis added).

The Next Level defendants do not make any other arguments for why they would be entitled to summary judgment on plaintiff's claim for benefits and reinstatement. Summary judgment on claim one is DENIED.

### B.     Violation of claims procedures

The Next Level defendants make an alternative argument for why they are entitled to summary judgment on plaintiff's claim for penalties under Section 1332(c). They argue that plaintiff's second claim fails, because the evidence definitively shows that they did not violate any statutory claims procedures. Plaintiff counters that he is entitled to summary judgment on the second claim because he has proven that the Next Level defendants violated certain regulatory claims procedures.

In his complaint, plaintiff alleges that he did not receive any information until over one year after his May 29, 2000 claim was submitted, and that the information that he has received to date does not contain adequate and sufficient reasons for the decision to withhold benefits and therefore is deficient. 3AC ¶ 32. Plaintiff argues that he can be awarded penalties under 29 U.S.C. § 1132(c) for the plan administrator's failure to comply with the notice requirements of 29 U.S.C. § 1331(1), as contained in regulations, both in response to his request for benefits and in response to his appeals.

Section 1133(1) of ERISA states that,

> In accordance with regulations of the Secretary, every employee benefit plan shall . . . provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant[.]

Section 1132(c) states that

10

> Any administrator . . . *who fails or refuses to comply with a request for any information* which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of administrator) . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal.

Emphasis added.[7]

Despite some complications due to the fact that Section 1133 is directed at plans and Section 1132(c) is directed at administrators of such plans, at least one circuit has found that "under specific circumstances, certain violations of section 1133 by a plan administrator may give rise to liability under section 1132(c)." *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996).[8] That court held that "a plan administrator's failure to respond to a claimant's request for an explanation of a plan's denial of benefits" can give rise to liability. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996). However, a demand for benefits or payment, without more, does not constitute a request for explanation and thus does not trigger liability under Section 1132(c). *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 623–24 (7th Cir. 1987) ("Once the claim has been formally denied, [the defendants] are obligated to provide the plaintiff with an explanation. But even at this point, without the plaintiff's request for information (i.e., an explanation for denying the claim), no § 1132(c) liability exists absent a plaintiff's request for the explanation he was entitled to under § 1133, and the failure of the defendants to provide that explanation within thirty days of the plaintiff's request."). If the Court were to agree with the Seventh Circuit's holding that a plan administrator can be penalized under Section 1132(c) for failure to comply with Section 1133, the language of the statute would also oblige the Court to agree with the Seventh Circuit's holding that a demand for benefits or payment, without more, does not trigger liability under Section 1132(c).

Plaintiff has neither alleged nor presented evidence that he "request[ed] . . . any information"

---

[7] Regulation 2560.503-1(g)(1)(iii) requires a plan administrator to "provide a claimant with written or electronic notification of any adverse benefit determination [including] . . . [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." Regulation 2560.503-1(j) places certain requirements on the "[m]anner and content of notification of benefit determination on review."

[8] Others have not. *See Stuhlreyer v. Armco, Inc.*, 12 F. 3d 75, 79 (6th Cir. 1993); *Groves v. Modified Retirement Plan for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 116 (3rd Cir. 1986).

11

from the plan administrator. Along with their motion, the Next Level defendants submitted copies of plaintiff's claim and plaintiff's three letters of appeal. Bradley Decl. Exs. A, D, F, H. Not only are they all directed at defendant Unum, but none requests any information at all.

In this case, Section 1132(c) does not permit plaintiff to bring an action against the Next Level defendants for failure to comply with the requirements of Section 1133(1) or of regulations. Nor does any other provision of ERISA. Because plaintiff is not able to state a violation of Section 1132(c) that would entitle him to penalties,[9] he is unable to maintain his second cause of action. Summary judgment in favor of the Next Level defendants on claim two is GRANTED.

## II.    Unum motion for summary judgment

Plaintiff alleges one claim against the Unum defendants in his Third Amended Complaint: claim three, for equitable and declaratory relief for violation of the terms of ERISA or the terms of the plan under 29 U.S.C. § 1132(a)(3). In particular, he alleges that the Unum defendants violated ERISA in the past; that they chose a particularly poor method for notifying claimants that they would have an opportunity for re-review under the RSA and CSA, a method that was calculated to lessen the number of re-review requests it would receive; and that this decision was "profit driven" and allowed them to retain "ill-gotten gains" from prior ERISA violations. 3AC ¶¶ 37–60. Plaintiff requests remedies, including disgorgement of profits, that he argues would redress the Unum defendants' ERISA violations, as permitted by 29 U.S.C. § 1132(a)(3).

The Unum defendants argue that plaintiff does not have standing to pursue this claim because he, in fact, received the RSA and CSA notices. They present evidence that plaintiff reviewed the RSA notice form before the notices went out. *See* MDL doc. 97 (plaintiffs' motion seeking to alter or supplement the RSA notice). They present evidence that the CSA notice was sent to plaintiff, and that he did not elect to participate in the reassessment. Griffin Decl. ¶¶ 9–10.

---

[9] Although the Third Circuit has held that a plan administrator may not be penalized under Section 1132(c) for failure to comply with the requirements of Section 1133, it has also held that a plan administrator *may* be penalized for failure to comply with regulations directed at a plan administrator (rather than at a plan). *See Groves*, 803 F.2d at 116. Even under the Third Circuit rule, however, plaintiff would still face the problem that he never requested any information.

12

1 Plaintiff does not actually admit that he received notice, but nor does he deny it, in his pleadings
2 or affidavit. Rather, he argues that he has standing to sue based on the wrongful denial of his claim in
3 breach of the Unum defendants' fiduciary duty; and that as a plan participant and beneficiary, he has
4 the statutory right to seek "to enjoin *any* act or practice which violates" ERISA, not just the ones that
5 may have resulted in an injury to him. 29 U.S.C. § 1132(a)(3) (emphasis added).

6 Claim three effectively asserts two claims—one regarding notice, and one regarding denial of
7 benefits. Plaintiff is correct that wrongful denial of benefits is an injury that could give him standing
8 to bring *some* Section 1132(a)(3) claim. But he is wrong that he has standing to obtain relief for those
9 who did not receive settlement notice when he himself did receive notice.

10 Thus, the question for the Court is whether plaintiff may maintain a Section 1132(a)(3) claim
11 against the Unum defendants based on a theory of wrongful denial of benefits. Several years ago, the
12 Court ruled that plaintiff could, because no other provision of ERISA provided adequate relief for the
13 alleged injury inflicted by defendant Unum. Doc. 25. At that point, however, plaintiff was seeking to
14 certify a class action and seeking to enjoin defendant Unum from wrongfully denying benefits in the
15 future. *Id.* at 9. Now, plaintiff is no longer seeking to certify a class action, and he is not seeking most
16 of the injunctive relief that he sought at the beginning of the case that would relate to claims processing.
17 Instead, plaintiff seeks only disgorgement of profits.

18 The Unum defendants argue that disgorgement of profits is the same as monetary relief, and
19 because monetary relief is available to him against the plan and plan administrator under Section
20 1132(a)(1), plaintiff is not entitled to sue the Unum defendants under Section 1132(a)(3). Plaintiff
21 argues that disgorgement is different because it permits him to seek relief beyond his benefits plus a low
22 rate of interest; rather, it allows him to disgorge the profits actually gained by the Unum defendants'
23 investment of his denied benefits, and perhaps even the profits gained by the wrongful denial of the
24 benefits of others.

25 This argument was persuasive seven years ago, when a class action was still possible and when
26 plaintiff sought injunctive relief above and beyond disgorgement of profits. It is no longer persuasive.
27 Plaintiff is entitled to a remedy for his injury only—that is, to benefits and reinstatement, which he is
28 able to seek and is in fact seeking under Section 1132(a)(1) against the Next Level defendants. ERISA

13

does not contemplate a parallel remedy against the fiduciary. The Unum defendants' motion for summary judgment is GRANTED.

### III. Plaintiff's motion for leave to amend

Plaintiff has moved for leave to file a Fourth Amended Complaint. The proposed Fourth Amended Complaint adds to plaintiff's third cause of action, asserted against the Unum defendants. Plaintiff wishes to allege that the RSA and CSA re-review processes violate ERISA as interpreted by the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008). As the Unum defendants point out, plaintiff has not requested re-review under the RSA or the CSA; nor have the RSA and CSA themselves, or his failure to request re-review pursuant to them, affected any of his rights or injured him in any way. Plaintiff's new theory is flawed just as his settlement notice theory was flawed. Plaintiff's asserted wrongful denial of benefits injury does not permit him to obtain relief for those who went through the RSA and CSA re-review processes when he himself was in no way impacted by the re-reviews. Plaintiff's motion for leave to amend is DENIED

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART the Next Level defendants' motion for summary judgment. (Doc. 79.) The Court GRANTS the Unum defendants' motion for summary judgment. (Doc. 82.) And the Court DENIES plaintiff's motion for leave to amend. (Doc. 87.) The only claim remaining in this case is plaintiff's claim for benefits and reinstatement against the Next Level defendants under 29 U.S.C. § 1132(a)(1).

**IT IS SO ORDERED.**

Dated: December 23, 2010

SUSAN ILLSTON
United States District Judge

14